Our fourth case for this morning is Fridman v. NYCB Mortgage. Mr. Edelman. May it please the Court, Counsel? One of the mortgage servicing abuses that was addressed by the Dodd-Frank Act was the delayed crediting of payments by mortgage servicers. Mortgage servicers must therefore credit payment as of the date of receipt. Under Consumer Financial Protection Bureau regulations, the date of receipt is the date that the payment instrument or other means of payment reaches the mortgage servicer. For example, payment by check is received when the mortgage servicer receives it, not when the funds are collected. So a check is an example, but not the only example, of a payment instrument. NYCB doesn't have offices in the Chicago area, but it does have customers. It therefore allows consumers to fill out a form on its website authorizing an ACH debit of the consumer's bank account. If the electronic form is a payment instrument or other means of payment, NYCB must credit the payment when it is received by NYCB, which is when it's filled out and you put it forward. So you assume when it's received is when the person clicks, they've filled in the routing number and the account number and they hit submit. It should be essentially instantaneously, yes. In fact, NYCB doesn't credit it until two business days later, resulting in this case in an $88 late fee. NYCB claims, and the district court agreed, that until the ACH transfer is completed, NYCB had no obligation to credit the account. The district court relied on the third sentence of the CFPB regulation, which says that if the consumer elects to have payment made by a third-party payor, such as a financial institution, through a preauthorized payment or telephone bill payment arrangement, payment is received when the mortgage servicer receives a third-party payor's check or other transfer medium, such as an electronic fund transfer. That third sentence has nothing to do with this case. There is no preauthorized payment or telephone bill payment arrangement with a third-party payor. So who do you think third-party payors are then? Financial institutions that you agree to have a preauthorized payment or telephone bill payment arrangement. I think the distinction made here is who has control over the speed with which the mortgage servicer gets money. So if I went to my bank and I said, here's the list of accounts I'd like you to pay for me every month, 1, 2, 3, 4, 5. And the bank then somehow or another figures out how much to pay. That, you think, would fall in this last sentence? Absolutely, as would a one-time direction by telephone. The key there is that what the bank issues is between you and the bank. For example, you can direct your bank to issue a paper check and put it in the mail, and it will get there in a few days. Alternatively, you can pay about $15 and have them execute a wire transfer, and it gets there in two hours. So at that point, you, the consumer, have control over how quickly the mortgage servicer gets paid. So in your view, this paragraph 3 of the official interpretation depends on whether the consumer is arranging directly with the creditor to pay, in which case you think it's a payment through some kind of payment instrument, like this electronic thing that you do, versus the consumer going directly to her own bank or other credit union or whatever she goes to and arranging for them to do it. That is correct. Once the mortgage servicer gets a check, gets any kind of document, paper, or electronic, which authorizes the mortgage servicer to get money, at that point in time the speed with which the mortgage servicer gets paid is up to the mortgage servicer, and it has to give credit, as in the case of a check, when it receives the payment instrument, not when the payment instrument is in fact paid through the banking system. Okay, so answer me this. If we're following the definition that we're talking about, the consumer elects to have payment made by a third-party payer, and in my hypothetical it's going to your own bank and saying, every month on the 4th pay my mortgage to somebody. Isn't this last sentence just stating the obvious? Payment is received when the mortgage servicer receives, to use the word twice, receives the third-party payment. When else would payment exist in a third-party payer situation? Well, for example, if the third-party payer, your bank, issued a paper check to the mortgage company, you would still have the issue of does the mortgage company receive payment when it has the paper check or when it collects the paper check. So, again, it says that when it has an instrument which it can control the speed with which it's turned into money, at that point in time you have to give, the mortgage servicer has to give credit. Okay, so you read this to be it's received when the mortgage servicer receives the third-party payer's check or other thing. They can't say you didn't pay until we collect it on the check. That is correct. And that's clear when it's a paper check as well. If I mail a paper check to the mortgage servicer, I get credited the time they've got it in their hands. That is correct. Even though it may take them a couple of days to collect it. I've got a very picky question for you, Mr. Hanelman, under your theory. If I recall correctly, the defendant was batching these online request forms every night at 8 o'clock, right? Correct. Okay. It's online. Presumably it's 24 hours a day. Suppose your client goes on at 10 o'clock on Thursday night and fills out the form. Is she entitled to credit on Thursday or Friday? The next business day, Friday in your example. The mortgage servicer has the right to establish a reasonable cutoff, which 8 o'clock is reasonable. So if it gets there at 8 o'clock, it's the next day. So you don't think that's not a problem? It's not an issue in this case. There was an issue as to precisely when, whether something was done on Thursday night or Friday morning. But what the mortgage servicer did in this case is not consistent with receipt as of Friday morning. So there would still be a violation. Is there any difference in terms of the information provided in that online form and the information contained on a paper check? None whatever. There are two differences. There are exactly two differences. The first is that the online form does not contain the magic words, to the order of. It's not relevant in this case because they're not planning to give it to a third party. In addition, instead of having an ink signature, you have a access code to get into the website and a mouse click. And again, those are now being recognized as an appropriate substitute. And it's already digitized. That is correct. This is actually more favorable. This system is more favorable to NYCB than, for example, a remote check or telephone check. They don't have to have somebody there every 24-7 to answer the phone, get the information from the consumer with a possibility of error, and then convert. They would then prepare a check, sign it as agent of the consumer with authority given over the phone, and put it through the banking system either as a paper instrument or as an ACH debit. They actually find that this is more beneficial to them if they created a remote check. They would have to credit the account as of receipt. But instead they, in effect, say you have to post-date your check by two business days. That's directly contrary to the regulation and simply not permitted. NYCB significantly never explains what payment instrument or other means of payment means. Our interpretation is found in numerous statutes and regulations, including the Dodd-Frank Act itself, dealing with the transmission of money electronically. Most of the regulations deal with regulation of the remitter, but it's still the same transaction, and it doesn't make sense that it would mean something different. They also don't explain what the distinction between the first two sentences and the third sentence is, which I submit turns on when the mortgage servicer has the authority to get money through the banking system. Did you all move for summary judgment in the district court? We did not and could not because we filed this as a class. Class had not been certified and, therefore, we could not move for summary judgment. I do believe that the question is essentially one of law. If there are no other questions. All right. If you want to save a second for rebuttal, I'll let you do that. Thank you, Your Honor. Ms. Polk. Good morning, Your Honors. May it please the Court, I'm Leanne Polk on behalf of NYCB Mortgage Company. Your Honor, I would like to answer your question first. You said, doesn't the third sentence of the rule of state be obvious? Well, only in the sense of you get the financial instrument from the third party. You receive it when you receive it. But Mr. Edelman said, well, there's still a question left if it's, for example, a paper check that Chase Bank sends to NYCB. Has NYCB received it as of the moment they get the Chase Bank check? Or do they receive it only when they collect the funds? So, in fact, he argues that the third sentence answers a question. No, I would, I obviously disagree. And it's very simple. When you process a check or when you process any mortgage payment, whether it's received by a third-party financial institution or from the borrower, the rule is the same. Well, no, I mean, let's look at this sentence. If the consumer elects to have payment made by a third-party payor, such as a financial institution, that's Chase in my example, through a pre-authorized payment or telephone, I don't know, anybody who does telephone bill payment, but anyway, through a pre-authorized payment. So I tell Chase, you know, on the fourth of every month, send a payment to NYCB. Payment is received when the mortgage servicer, NYCB, receives the third-party payor's check or other transfer medium. So, in other words, you can't wait for collection. You actually have to credit it as received then. Which is the same rule if the borrower sends the check. You have to credit the account when you receive it. Which is exactly right. So what the Consumer Financial Protection Bureau has done is it's made sure that if the borrower has made an arrangement with her bank, then you'll credit her for the payment when the mortgage servicer receives that third-party payor's check. And if she deals directly with you, you agree if it's a paper check, you have to give her credit as of the day you receive that paper check. Even though you're going to take the paper check, you're going to digitize it, you're going to send it through the clearance system, you're not going to wind up the funds for a little while. It's actually not that long, but for a short period of time. I'm baffled by your argument in that you seem to think that we need to create an incentive in the system for people to go back to using paper checks. Oh, no, not at all. This is so absurd to me. But they're better off with paper checks under your view. No. Sure they are. Because you have to give them credit for the paper check the minute you get it, not when you collect the funds. No. I think the problem is that we need to focus on the payment method that was actually used in this case, and it's undisputed that it is an ACH electronic transfer. So what? ACH does everything. Your Honor. But ACH is not a payment mechanism? It is a payment mechanism. And that's what the regulation talks about. And an ACH payment mechanism is described in a Seventh Circuit decision that is cited in the briefs, as well as other district court cases here. And there's no dispute that the payment made here was made through the ACH system. I see no – well. Let's try it this way. When the plaintiff filled out her form online, you had all the information and authority you needed to collect money from her bank account, correct? No. That's not correct. We had the authority, but because of the ACH system, the way that it works is that it has to go to the ACH processor. And just like a paper check does. How is this different from you holding a paper check from her and submitting it through the same system? Because a paper check is a demand instrument. Under our law, we have negotiable instruments that are entitled to be paid upon demand. There's nothing about negotiability. That's not what this says. This says means of payment, payment instrument or other means of payment. How is all that information and the permission to take it out of her bank account not a means of payment? It is a means of payment, Your Honor, but it's a means of payment that is not completed until her Bank of America account is debited. You can't just take her check. That's the same as with a check. Until it clears, until it's debited. Excuse me, Your Honor. It's very difficult to see why this kind of payment should be treated differently from a check, although I'm surprised that you aren't challenging the portion of the official staff commentary that says a check should be credited on the date it's received. I think that's fair. Since the statute says payment and not receipt of an instruction for payment. In terms of negotiable instruments, to answer both of Your Honor's questions, the CFPB also provides implied guidelines for payments, how borrowers can make payments. Those guidelines state that a borrower can make a payment by cash, money order. Money order is negotiable. Draft or other similar instruments in properly negotiable form or by an electronic fund transfer if the servicer and customer have so agreed. Now, Your Honor, I understand where you're coming from with the example of calling your own bank, calling Chase or going online. I used to pay my bills like that too. I don't pay my bills that way, but I know it's done that way. Or was 20 years ago. Your Honors, let me give you another example of how the ACH system would work and how Plaintiff's argument makes absolutely no sense when you apply it in the real world context, Your Honor. I want you to stick for a second on my question, which is why are you conceding that a check amounts to payment received when the check is received? The statute talks about the date of receipt of the payment, not of the payment instrument. Well, Your Honor, I understand your point, but I also understand that we're not going to argue with the CFPB when they say... Well, your problem is that there does not seem to be any rationale for the difference between the second and third sentences of the staff commentary. They appear to be financially identical. You're urging us to have a difference, and I'm trying to figure out why. Your Honor, I am not urging to have any difference. Yes, you are. You're saying the check is credited the moment it crosses the transom, and this electronic payment instruction is not, even though in either case, good funds will not be in your client's hands for two days. It doesn't matter, because you cannot... This is not about a check. We use the ACA. No, it's not about a check. You know it's not about a check. It's about the payment instrument or other means of payment. That's deliberately broader than check. They know that checks exist because the next sentence says, for example, payment by check, dot, dot, dot. Your Honor, let me please give you another example. Let me try a different example with you, counsel. We've read your briefs. This is our chance to ask questions. Suppose your client decided to batch these online payment forms for processing, not every night, but, say, every three days or once a week. Would you still believe then that the mortgage borrowers get credited only after you've batched their requests, submitted them to their banks, and then received the payment back? No. Why not? No, because the bank follows the ACH rules for processing ACH payments, and that means when you get the borrower's authorization, which simply starts the process for authorizing the payment. Okay. Where do we find that requirement? That requirement is in the Seventh Circuit decisions. It's also in the district court. There's no requirement in the Seventh Circuit decisions to submit payments the night they are received. I'm sorry. I misunderstood the question. I thought you were asking for where is it described for the ACH process. What is the legal source of the requirement that you submit them every day? It's in NACCHA, in the NACCHA rules, which governs. What's that? It is, I don't know what the acronym stands for, Your Honor, but it governs. I've never heard of the acronym. It is the organization that governs the processing of ACH payments. So it's a private agreement? Well, Your Honor, the Federal Reserve also is a clearinghouse for the ACH system. You have two clearinghouses for the ACH system. You either have the Federal Reserve or you have what is known as EPN, which is what NYCB uses. If I may, please, though, just to give you another example of how the third sentence in that data receipt provision of the CFPB regulation would apply. One of the documents attached to our Statement of Uncontested Facts is a copy of Ms. Friedman's mortgage statement. It is Exhibit J. It is page ID 233 in the record. Now, plaintiff's position is anytime you have a payment authorization, that's the date you have to credit the account, even though that's not what the statute says. It's not a payment authorization that triggers a posting date. It's when you receive a payment. If you look on the reverse side of her mortgage statement, there's a form that she can actually fill out, and it is entitled Automatic Payment Plan Authorization. If she provides her bank name here, Bank of America, the account number, the routing number, the same type of information she had to provide online to effectuate a single transfer of electronic funds. If she fills this out and says, I want a recurring payment every month, according to plaintiff's position, when NYCB gets this document, they have to automatically credit her account for all of her payments. What? That's why it doesn't make sense, Your Honor. It makes absolutely no sense. Is this in the briefs? Did I miss this? This mortgage statement is in the record, and the reason I'm raising it is in their reply briefs. That's under the third-party payor provision. I think you're making up problems that don't exist. On your view, what is going to happen if the borrower fills out that instruction and it says, I want the money to be received by NYCB on the first of every month? Yes. And NYCB simply fouls off and doesn't begin the ACH process until the first, and the money is then received on the third. Yes. Can ACB then charge a late payment? No, absolutely not. Why not? On your view of the staff commentary, the funds aren't credited until they're received. Well, late chargers are not imposed until after the grace period expires. Well, so suppose there's no grace period. You're not really going with the hypothetical here. Let me throw one other hypothetical. You didn't like my last example. Let's suppose it's the night of the 14th. Plaintiff submits her online payment form at 7.59, and at 8 o'clock, your system crashes. And it's not back up for two or three days. So the payment doesn't wind up getting you don't wind up obtaining cash in your bank account until after the grace period has expired. What happens then? I can tell you, Your Honor, I've represented enough banks to know what they would do in that operational challenge. They would not charge a late charge. Under your legal theory, could you? Because you haven't received the payment under your theory until several days later, right? That's correct, Your Honor, but I don't think under the spirit of this rule that a mortgage company could do this. If you have a system crash and it delays payments by two days, you can't take advantage of what the rule says. Well, that would be the moral way to do it, but I'm not sure you're legally compelled to do the decent thing. I mean, I'd like to think that you're right, and they would. But in any event, if you want to just wrap up quickly, we'll hear from Ms. Shreddleman. Your Honor, the district court correctly entered summary judgment in favor of NYCB. Plaintiff's argument requires this court to impose language on a very clear statute that is not there. There is nothing in this statute that triggers the obligation to post a payment of when a borrower, quote, authorizes a payment. How is that obligation ever supposed to be monitored by the CFPB? How are mortgage servicers supposed to comply with that? Okay, thank you. All right, thank you very much. Anything further, Mr. Edelman? I would like to answer Judge Easterbrook's question. A check and similar instruments are treated as conditional payment. It is payment upon receipt, conditioned upon it clearing and eventually turning into money. Why? Because, again, once the mortgage servicer has a check or similar payment document, the speed with which it is turned into money is up to the mortgage servicer. In theory, if I get a paper check, I can take it to the issuing bank and ask them to turn it into currency. They'll have me wait and ultimately pay me. Business isn't conducted that way, but in theory, one can do that. Similarly, with a document of this sort, the only difference is that it's electronic. You don't have to batch it at the end of each day. You could submit it individually, as in the case of a wire transfer. The question is what the company wants to pay and how quickly it is done. With respect to postdated instruments, the payment should be treated as effective upon the receipt of the physical document and the executable date of the authority. If it's a postdated check, it's when the date passes. If I voluntarily elect to give them an electronic document that's postdated, same applies. What the bank cannot do is require me to postdate the instrument. If I walk in and pay with a paper check, they can't have a sign-up that says, you must date this check two or three days in the future. We don't take currently dated checks. That's what the regulation is intended to prohibit. All right. Thank you very much. Thank you. Thanks to both counsel. We'll take the case under advisory.